UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

UNITED STATES OF AMERICA               :
                                       :
         v.                            :          25-CR-66 (SFR)
                                       :
ZACHARY FOSTER, *et al.*               :
                                       :
---------------------------------------------------------------- x

## MEMORANDUM AND ORDER

Defendants Zachary Foster and Kevin Lucas are charged with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), Foster timely moved for an evidentiary hearing to challenge the affidavit supporting a wiretap application granted in February 2025. ECF No. 163. Kevin Lucas joined in the request. ECF No. 165, at 4. After I granted Foster's motion to conduct an evidentiary hearing, the Government moved for reconsideration. ECF No. 188. For the reasons that follow, the Motion for Reconsideration is denied.

## I.    BACKGROUND

"To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (internal quotation marks omitted). "If a defendant makes a substantial preliminary showing, *Franks* noted that the defendant is entitled to a hearing where he must establish falsity, knowledge, and materiality 'by a preponderance of the evidence.' If a defendant prevails at the *Franks* hearing, 'the search

1

warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks v. Delaware*, 438 U.S. at 156) (citations omitted).

As the Supreme Court explained in *Franks*:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

*Franks*, 438 U.S. at 171.

Accordingly, to mandate an evidentiary hearing, a defendant must make a "substantial preliminary showing" that is "more than conclusory" but necessarily less than a preponderance of the evidence, which is the standard the defendant must meet to prevail at the hearing itself. *See Sandalo*, 70 F.4th at 85-86 (noting that to be entitled to a *Franks* hearing a defendant must make a substantial preliminary showing of falsity, knowledge, and materiality and "courts have construed the burden imposed by the 'substantial preliminary showing' standard as a heavy one that requires more than a mere conclusory showing").

In support of his request for a *Franks* hearing, Foster argues that the affiant deliberately or recklessly omitted material facts from the wiretap affidavit ("Affidavit") that show that Foster had a legitimate business relationship with Jordan Jamison and rented a commercial property from him. ECF No. 163-1, at 10. Foster points to intercepted calls that he says demonstrate this relationship and provides a copy of his lease for the property and rent payment receipts. Foster maintains that, after this improperly omitted information is put into the Affidavit, the Affidavit does not support probable cause. *Id.*

2

The Government opposes conducting a *Franks* hearing. ECF No. 176. According to the Government, certain calls referenced in the Affidavit (especially a call where the Government asserts Foster stopped himself midway through saying the word "girl" to refer to cocaine and another during which Foster discussed his weariness of "the streets"), combined with information about Foster's criminal history, Jamison's criminal activity, and information from a confidential source, would be sufficient to find probable cause independent of any legitimate business and landlord-tenant relationship between Foster and Jamison. ECF No. 176, at 18-22, 30-33 ("Two drug dealers can have a landlord-tenant relationship and both still deal drugs. . . . There is no legitimate landlord-tenant reason for a tenant to call the landlord and ask, 'you got the gir[-,]' as Foster asked Jamison in the January 10th call.").[1]

I resolved Foster's motion for a *Franks* hearing via an order in the docket. My order stated as follows:

> ORDER. Defendant Foster's Motion for Hearing Pursuant to *Franks v. Delaware* is granted in part. At the hearing, the defense may seek testimony from the affiant of the wiretap affidavit regarding (1) what the affiant knew about the nature of the relationship between Foster and Jamison prior to submitting the affidavit; (2) what investigation was conducted into the nature of the relationship between Foster and Jamison prior to the submission of the affidavit; and (3) what information about the nature of the relationship between Foster and Jamison was reviewed by the affiant, or available to the affiant, prior to submitting the affidavit. The hearing will not include testimony on the issue of necessity under 18 U.S.C. § 2518(3)(c).

ECF No. 178.

---

[1] With its response, the Government submitted to my courtroom deputy the February 7, 2025 Affidavit, Foster's 2021 plea agreement, and transcripts of two calls—Sessions 119 and 914. Foster submitted the February 7, 2025 Affidavit, audio recordings of 15 calls (Sessions 119, 126, 223, 224, 783, 788, 789, 814, 906, 909, 914, 1237, 1307, 1309, 1310), transcripts of those calls, a copy of a lease, and receipts. At a status conference on April 21, 2026, I directed the parties to confer and then file these exhibits on the docket along with a motion to seal and redacted versions of the exhibits to the extent they seek to maintain any material under seal.

## II.    MOTION FOR RECONSIDERATION

The Government timely moved for reconsideration of my order. ECF No. 178.[2] Foster opposes the Government's motion. ECF No. 192.

### A.    Legal Standard

The Second Circuit has repeatedly held that "[t]he standard for granting . . . a motion [for reconsideration] is strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "will generally be denied unless the [movant] can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Courts have granted motions for reconsideration in limited circumstances, including: (1) where there has been an "intervening change of controlling law"; (2) where new evidence has become available; or (3) where there is a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478, at 790).

### B.    Discussion

The Government argues that I committed a clear error of law in granting a *Franks* hearing because I "made no findings as to whether the defendant satisfied [his] 'heavy' and 'high' burden of a 'substantial preliminary showing' of the facts of omission or their

---

[2] I originally scheduled the *Franks* hearing for April 22, 2026. ECF Nos. 174, 181. On April 20, 2026, in addition to filing the present Motion for Reconsideration, the Government also moved to continue the *Franks* hearing, noting in its motion that it "needs more time to prepare its witnesses and exhibits for the hearing." ECF No. 190, at 1. After convening a status conference, I rescheduled the hearing for April 30, 2026, which was the next date when all counsel were available. ECF No. 200.

materiality." ECF No. 188, at 2 (quoting *Sandalo*, 70 F.4th at 85). The Government asserts

that Foster failed to meet his burden and "[b]y failing to consider or address this argument at

all, the Court has overlooked controlling precedent . . . that ought reasonably be expected to

alter the conclusion reached by the Court." *Id.* at 3. I find neither argument persuasive.

### 1.     Discretion to Hold *Franks* Hearing

Although a district court is *required* to conduct a *Franks* hearing when a defendant

makes a "substantial preliminary showing," *Sandalo*, 70 F.4th at 85, a court does not err by

exercising its discretion to convene an evidentiary hearing even absent such a showing. In

*United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015), the Government argued on appeal

that the district court committed reversible error by affording a *Franks* hearing without a

sufficient preliminary showing. Then-Judge Gorsuch, writing for the Tenth Circuit, rejected

that argument, stating:

> It seems to us the government's argument mistakes *Franks* to prohibit what it
> doesn't require. Of course, a defendant has no right to an evidentiary hearing
> unless he first makes the showing the Supreme Court has prescribed. But from
> that it doesn't follow that a district court errs when it grants a hearing without
> such a showing. After all, lots of things in the law, as in life, aren't mandatory
> but still permissible. A criminal defendant isn't constitutionally required to
> testify but he is allowed to do so. He isn't constitutionally compelled to file a
> motion to dismiss but surely he may. And *Franks* speaks only of the showing a
> defendant must make to "mandate" an evidentiary hearing. Nothing in the
> opinion or the logic on which it rests suggests a district court must forswear an
> evidentiary hearing unless the defendant's motion makes one constitutionally
> compulsory. Neither does the government cite any other potential source of
> authority for such a rule.

*Id.* at 573 (citation omitted). He continued:

> [D]istrict courts generally enjoy a fair amount of discretion in choosing the
> procedures they find most helpful for resolving pretrial motions, including
> whether to take the matter on the briefs, hear oral argument, or hold an
> evidentiary hearing. And often enough courts will choose to err on the side of
> granting more process than might be strictly necessary in order to ensure not

only that justice is done but that justice is seen to be done. Whether because of intuition born of experience that a meritorious issue may lurk in an imperfectly drawn application, or simply out of a jealous wish to guard individual rights against governmental intrusions, judges sometimes allow a claimant a fuller hearing than the law demands. In a democratic legal order built on the promise of due process and the vindication of individual rights that's often thought laudable or at least generally permissible—and in any event not the stuff of automatic reversal. So, as we've explained in another context, where an evidentiary hearing isn't mandatory it's usually discretionary and the decision to grant one is subject to review only for abuse of discretion. The government gives us no reason to think any more grudging a standard should apply here. Neither does it even attempt to suggest how the district court might have abused its discretion when granting a hearing in this case.

*Id.* at 573-74 (citation omitted); *see also* Lafave, 2 Search & Seizure § 4.4(d) n.84 (6th ed.).

To be sure, courts in this Circuit sometimes issue pre-hearing decisions explaining why a defendant is entitled to a *Franks* hearing. *See, e.g.*, *United States v. Butt*, No. 18-cr-00087 (NSR) (S.D.N.Y. Oct. 1, 2018), ECF No. 37. But other courts have scheduled *Franks* hearings without making specific on-the-record findings. *See, e.g.*, *United States v. Valentin*, No. 23-cr-292 (RPK) (E.D.N.Y. Nov. 14, 2024) (granting motion for *Franks* hearing without written findings); *United States v. Qiang*, No. 92-cr-789 (JFK), 1993 WL 190347, at *1 (S.D.N.Y. June 2, 1993) (making no findings relating to the *Franks* motion but stating that "this request is granted in an excess of caution"). On other occasions, courts have referenced the facts presented by defendants and the *Franks* standard without extended analysis or reasoning. *See, e.g.*, *United States v. Burgos*, No. 20-cr-182 (VEC) (S.D.N.Y. Aug. 16, 2021), ECF No. 149, at 18 (stating, after colloquy with counsel about allegedly false statements: "I think we have to have a hearing"); *United States v. Serrano*, No. 86-cr-487 (WCC), 1986 WL 10488, at *3 (S.D.N.Y. Sept. 18, 1986) (reciting the alleged falsehoods identified by the defendant and then stating "that the defendant has met the requirements set out in *Franks,* and accordingly, the defendant's motion for a hearing is granted").

I therefore decline to revisit my decision to grant a *Franks* hearing even without formal findings regarding Foster's preliminary showing.

### 2. Substantial Preliminary Showing

Although I have discretion to hold a hearing even absent Foster making a substantial preliminary showing, a *Franks* hearing is required here because Foster has made a substantial preliminary showing that (1) the affiant deliberately or recklessly omitted information and (2) these omitted facts are material to the probable cause determination.

Foster maintains that many of his intercepted communications with Jamison related to their legitimate business relationship: these communications included discussions of rent payments, property maintenance, utility bills, legitimate business ventures, and a business relationship dating back to May or June 2024. ECF No. 163-1, at 8-9. Yet the affiant failed to disclose information about the legitimate relationship in the Affidavit in support of a wiretap application.

Foster plausibly asserts that omitted facts relating to Foster and Jamison's legitimate business relationship undermine the Affidavit's suggestion that Foster was engaged in a criminal conspiracy with Jamison. Foster's attack on the Affidavit is more than conclusory: he supports his argument with content from intercepted calls, documents relating to the landlord-tenant relationship, and a detailed argument for why the omitted information requires certain intercepted communications to be understood differently. For example, the affiant refers to calls where Foster and Jamison arrange to meet up for Foster to give money to Jamison and asserts a belief that the money was payment for "an earlier completed controlled substance transaction." Aff. ¶¶ 108-09. Foster maintains that, with the omitted information added to the

Affidavit, it is apparent that these conversations related to the exchange of rent rather than any illicit activity. ECF No. 163-1, at 10.[3]

At the *Franks* hearing, the Government will have the opportunity to advance the argument that Foster has failed to carry his burden and suppression is thus not warranted. At this stage, however, I am not determining whether Foster has established omission, knowledge, and materiality by a preponderance of the evidence. *See Sandalo*, 70 F.4th at 85. Rather, I instead examine whether Foster has made a "substantial preliminary showing" entitling him to a *Franks* hearing. For the reasons discussed above, I have concluded that he has.

III.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Government's Motion for Reconsideration is denied. The *Franks* hearing will take place on April 30, 2026, at 9:15 A.M. in Courtroom Three.

**SO ORDERED.**

New Haven, Connecticut
April 27, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

---

[3] Foster observes that the affiant omitted information from various calls including Session 906, in which Foster said he had been in business with Jamison since May or June and disputed a $900 water bill at a shared property. ECF No. 163-1, at 8. He argues: "This conversation directly, unambiguously establishes the business relationship between the two men. . . . Drug transactions do not generate joint utility bills. Drug dealers do not threaten to dispute shared water charges. The affiant had this call. It would have devastated the probable cause presentation. It was omitted." *Id.* As Foster argues, this call and other omitted information plausibly could have recontextualized several ambiguous calls relied upon by the affiant to support probable cause.