UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

UNITED STATES,                                     :
                                                   :
          v.                                       :          25-CR-66 (SFR)
                                                   :
ZACHARY FOSTER and KEVIN LUCAS,                    :
                                                   :
                              Defendants.          :
---------------------------------------------------------------- x

## RULING ON MOTIONS IN LIMINE

Defendants Zachary Foster and Kevin Lucas are jointly charged with Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C),[1] and 846. Evidence will begin on May 18, 2026.

This Opinion resolves three motions *in limine*: First, Defendants have moved to preclude the Government from offering expert testimony regarding drug trafficking organizations. ECF Nos. 168 & 186. Second, Defendants seek to limit the scope of testimony by case agent witnesses pursuant to Fed. R. Evid. 701. ECF No. 186. Third, the Government moves to conditionally admit co-conspirator statements. ECF Nos. 204.

## I.     LEGAL STANDARD

Motions in limine "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieiri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996) (citation omitted). "Evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on any grounds." *Morant v. City of New Haven*, No. 3:22-

---

[1] Foster is also charged with § 841(b)(1)(B)(ii).

CV-630 (SVN), 2026 WL 1108118, at *2 (D. Conn. Apr. 23, 2026) (citing *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013)). "A court's ruling on a motion in limine is not set in stone; it 'is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.'" *Id.* (quoting *Palmieiri*, 88 F.3d at 139). A trial judge may also "reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019).

## II.    DISCUSSION

This Opinion addresses three separate issues. First, I explain the proper scope of testimony by the Government's proposed expert, Special Agent Veale of the FBI. Second, I analyze the applicable limitations on the ability of case agents to offer lay opinions as they narrate their investigation into Defendants. And third, I reject Lucas's request for a ruling in advance of trial as to the admissibility of certain statements by alleged co-conspirators.

### A.    Expert Testimony (ECF Nos. 168 and 186)

The Government intends to offer the expert testimony of FBI Special Agent Daniel Veale. ECF No. 148. Veale has more than a decade of experience working on narcotics investigations for the FBI. ECF No. 148-1, at 2. Foster and Lucas both object to this proposed use of expert testimony. ECF No. 168-1, at 1; ECF No. 186-1, at 6-7. After discussion at the first trial management conference on May 5, 2026, the Government filed a supplemental memorandum setting forth the proposed scope of Veale's testimony. ECF No. 243. Defendants filed supplemental objections. ECF Nos. 247 & 252.

2

Expert testimony is admissible where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert "testimony is appropriate when the untrained layman would be unable intelligently to determine the particular issue in the absence of guidance from an expert." *United States v. Pollok*, 139 F.4th 126, 139 (2d Cir.), *cert. denied sub nom. Ray v. United States*, 146 S. Ct. 834, 223 L. Ed. 2d 248 (2025) (citation and internal quotation marks omitted). "[A]lthough 'the operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702, we have carefully circumscribed the use of such testimony to occasions where the subject matter of the testimony is beyond the ken of the average juror.'" *United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). Stated otherwise, "[t]estimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *Id.* at 194.

The Government originally proffered that Veale may testify "about the manner, means and common practices of narcotics traffickers and narcotics trafficking organizations, including, but not limited to, evidence indicative of drug distribution versus drug possession for personal use; typical quantities and prices for street-level distribution and higher levels in the distribution chain; common practices in the distribution of narcotics; and the utility of certain items (i.e., 'tools of the trade') to further drug trafficking operations, such as the use of packaging materials, plastic baggies, scales, and firearms." ECF No. 210, at 5.[2] In response to

---

[2] The Government proffers that Veale may also testify about "general information on street-level and redistribution-level narcotics sales in Connecticut in the relevant period." ECF No. 148-1, at 2-3. Defendants do not challenge expert testimony into this topic, and it also appears to be consistent with the proper scope of expert testimony. *See Pollok*, 139 F.4th at 140 ("[E]xpert

my questions at the May 5 conference, the Government confirmed that Veale will not comment on the connection between firearms and drug traffickers. Nor will the Government ask Veale to interpret or offer opinions on any specific evidence in this case. ECF No. 243, at 2. In particular, the Government confirms that Veale will not "be asked to review the intercepted communications before the jury." *Id.*[3]

Foster objects that an agent involved with the investigation should not be permitted to testify as an expert witness, ECF No. 168-1, and Lucas argues that an agent should not be "permitted to testify as an expert specifically tailored to the allegations of the instant case," ECF No. 247, at 3. Although the Government initially stated that Veale "is not involved in the case, other than his anticipated testimony," ECF No. 148, at 1, the Government's supplemental brief acknowledges that Veale "did assist with a search warrant at takedown," ECF No. 243, at 2. Nonetheless, the Government states that Veale will testify only as an expert and has committed that Veale "will not be asked any questions about the search warrant that he assisted with on takedown." *Id.*

The Second Circuit has cautioned that "[w]hen case agents testify as experts, they gain unmerited credibility when testifying about factual matters from first-hand knowledge."

---

testimony on general background concepts is permissible under Rule 702 where it helps to explain or put into perspective characteristics and operating practices common to certain criminal conduct, with which a jury may not be familiar."); *see also id.* ("[W]e have repeatedly upheld the use of expert testimony by government agents to describe the characteristics and operating methods of narcotics dealers, including testimony concerning methods of selling narcotics, the street value of narcotics, code and jargon used by narcotics dealers, and physical evidence related to narcotic transactions presented before a jury.") (citation and internal quotation marks omitted).

[3] Although counsel for Lucas expressed particular concern about any expert testimony concerning the use of the phrase "creeper" and references to "200," which are terms Lucas used in intercepted communications, the Government confirmed at the May 5 conference that Special Agent Veale will not opine on the meaning of those phrases.

*United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (internal quotation marks omitted). Moreover, there is a risk of unfair prejudice where agent-experts "tailor the testimony to match the evidence in this case." *United States v. Reddick*, 284 F. Supp. 3d 159, 163 (D. Conn. 2018); *see also id.* (stating "[t]his is precisely the type of made-to-order expert testimony that the Second Circuit has warned should not be permitted in these kinds of cases" and "[t]he Government cannot satisfy its burden of proof by taking the easy route of calling an 'expert' whose expertise happens to be the defendant") (internal quotation marks omitted).

Here, Veale will not testify in a dual role as both an expert and a fact witness; instead, the Government will seek only expert testimony from Veale. In addition, although Lucas objects that Veale's proposed testimony that "narcotics transactions typically occur in private (inside vehicles, or inside buildings)," ECF No. 243, at 4, is tailored to the facts of this case, I conclude that this testimony is general enough to avoid the problems at issue in other cases such as *Mejia* and *Reddick*.

In its Supplemental Notice, the Government states that Veale will address the following: "[c]ommon terminology and code words used in trafficking heroin, cocaine, fentanyl and marijuana that have particular meaning within the narcotics trade,"[4] "[t]he utility of certain items . . . used to further drug distribution such as packing materials . . . cutting agents . . . , distribution paraphernalia . . . , multiple and replacement cellular telephones; the

---

[4] The Government identifies the following specific terminology:

> Soft or hard; Dub, ball, eight-ball; Girl or boy; Bun, bundle, brick, plate; as well as that it is common for narcotics traffickers to speak over the telephone in coded language; as well as their reluctance to speak over the telephone regarding drug transactions.

ECF No. 243, at 3.

use of encrypted applications for communication and other tactics to avoid law enforcement detection, the use of 'stash' locations, and the maintenance of large sums of U.S. currency." ECF No. 243, at 3-4.

Lucas argues that Veale should not be permitted to testify as an expert on "the use and meaning of coded and slang language" because the intercepted communications at issue here contain only "general, ambiguous non-specific references." ECF No. 186, at 7. To the extent this concern is not obviated by the Government's commitment that Veale will not be asked to interpret the intercepted communications in evidence, I am not convinced that Veale's proposed testimony violates Rule 702. The Second Circuit has "consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs." *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003);[5] *see also United States v. Taylor*, No. 23-CR-62-OAW, 2025 WL 243391, at *2 (D. Conn. Jan. 20, 2025) (permitting expert testimony into "narcotics jargon," but restricting proffered expert from "explaining commonly understood phrases"); *United States v. Franco*, No. 3:22-CR-43-1 (VAB), 2025 WL 501843, at *11 (D. Conn. Feb. 14, 2025) (permitting expert testimony into "non-case-specific things surrounding drug trafficking that would be helpful to the jury, but would be beyond the knowledge of the average juror").

Defendants next contend that expert testimony is not useful or necessary to explain "[t]he manner in which drug dealers obtain, sell, package, and store their narcotics." ECF No.

---

[5] In *Dukagjini*, the Second Circuit held that agent-experts may not give expert testimony as to statements where there is no evidence that particular "phrases were drug code with fixed meaning either within the narcotics world or within this particular conspiracy." *Dukagjini*, 326 F.3d at 55; *accord United States v. Londono-Tabarez*, 121 F. App'x 882, 884 (2d Cir. 2005) (summary order); *United States v. Swinton*, 480 F. Supp. 3d 385, 393 (D. Conn. 2020).

168-1, at 2. In particular, Foster posits that the average juror has enough exposure to popular depictions of drug trafficking that any expert testimony is unduly prejudicial here. *Id*. Foster's supplemental notice elaborates on this argument, stating that "the idea that drug dealers – or any individuals engaging in illegal activity – are reluctant to speak over the telephone is 'within the grasp of any citizen,' and agent expert testimony is not needed on that point." ECF No. 247, at 3. However, the Second Circuit has acknowledged that a "lay person is unfamiliar with law enforcement surveillance techniques." *United States v. Cabrera*, 13 F.4th 140, 150 (2d Cir. 2021). I cannot say that popular knowledge of wiretaps and other government investigative techniques is so widespread as to obviate the need for expert testimony explaining how drug traffickers commonly modify their communication practices to mitigate against the risk of surveillance.

Without withdrawing his motion *in limine*, Foster's counsel properly acknowledged at the May 5 conference that courts routinely permit expert testimony into the packaging and other tools of the trade used by alleged drug traffickers. For example, in *United States v. Reddick*, 284 F. Supp. 3d 159 (D. Conn. 2018), the Government proposed to elicit expert testimony into "the methodology for the distribution of cocaine, cocaine base, heroin, and fentanyl; the typical wholesale and street-level retail quantities and prices for these controlled substances; the manner in which cocaine is converted into cocaine base; the manner in which heroin is broken down and packaged for distribution; common practices in the distribution of narcotics; and the utility of certain items (i.e., 'tools of the trade') to further drug trafficking operations. *Id.* at 161. Judge Meyer agreed that expert testimony was useful and necessary, explaining that, in his view, "I do not think that the average juror would likely be familiar with the particulars of and differences between cocaine, heroin, and fentanyl. This is especially true

for fentanyl, which has most recently emerged as a very common narcotic for distribution. Nor do I believe that the average juror would likely be familiar with how cocaine, heroin, and fentanyl are usually packaged for sale and with pricing practices for these narcotics." *Id.* at 161-62. Judge Meyer also permitted testimony into "tools of the trade" for narcotics trafficking, stating his belief "that the average juror would likely know the use that certain otherwise innocuous items may have for a person who is involved in narcotics distribution." *Id.* at 162.[6]

I find Judge Meyer's reasoning in *Reddick* to be persuasive and relevant to the proper scope of expert testimony here, and agree that the Government's proffered use of expert testimony, as clarified in its Supplemental Notice, ECF No. 243, is consistent with Rule 702.

I will tailor Veale's testimony in one respect. At the May 14 conference, in response to Defendants' objection to any testimony concerning marijuana packaging, the Government asserted that Veale should be able to explain the differences in packaging for marijuana, cocaine, and other opiates to rebut any argument that Defendants or their co-conspirators thought they were distributing another controlled substance like marijuana. I agree that the Government cannot use such expert testimony to rebut potential defenses based on the current record.

I reserve judgment on one aspect of Veale's proposed testimony, namely whether Veale can testify to the fact that drug users may experience withdrawal symptoms. The Government

---

[6] Judge Meyer prevented the expert from testifying about firearms as a tool of the drug trade, concluding "I don't think average jurors need an FBI or DEA agent to tell them that drug dealers often use or possess firearms to protect themselves and their drugs and drug profits," and, alternatively, the proposed testimony regarding firearms was unfairly prejudicial as it was too closely tailored to the facts of the case. 284 F. Supp. 3d at 161-62.

proffered that this expert testimony describing withdrawal symptoms is relevant to explain why in some intercepted communications alleged drug purchasers contacted Foster complaining that they were "sick." At the May 14 conference, Defendants asserted that the fact that opioid users experience withdrawal symptoms is within the ken of the average juror. I will take up this issue separately and issue a ruling ahead of trial.

Finally, I note one outstanding issue on expert testimony. At the May 14 conference, the Government explained that Veale may also be asked to testify about how heroin and marijuana are commonly packaged, even though the indictment charges Defendants with conspiracy to distribute cocaine and fentanyl. Defendants objected, arguing that heroin distribution is not relevant to the charges these Defendants face. I require additional briefing before I can resolve whether evidence concerning heroin distribution—including expert testimony into the packaging of heroin—is relevant here. Defendants may file an objection on or before May 18, 2026, at 9:00 am, setting forth any reasons that evidence regarding heroin distribution is not relevant to this case.

I therefore deny in part Foster's Motion to Preclude Expert Testimony, ECF No. 168.

### B.    Lay Witness Testimony by Law Enforcement Officers (ECF No. 186)

The Government intends to call several case agents to testify as fact witnesses. Foster moves to preclude law enforcement witnesses from offering lay opinion testimony about any matters that are outside of those witnesses' direct perception. ECF No. 186-1, at 5-6. Following discussion at the May 5 conference, I instructed the Government to file a supplemental brief to respond to Defendants' concern that case agents' lay opinion testimony may fall astray of

9

Rule 701. ECF No. 236.[7] The Government filed a supplemental notice. ECF No. 243. And Defendants filed supplemental objections. ECF Nos. 247 & 252.

The Government explains that it "intends to call numerous law enforcement witnesses to testify regarding their personal observations about, among other things, the defendants, their co-conspirators, and their activities." ECF No. 243, at 6. In particular, the Government says that its witnesses will "testify about various incidents related to the narcotics trafficking conspiracy, based on their personal experiences and observations while conducting surveillance, during the investigation of this case, other co-conspirators, and other witnesses, from reviewing relevant evidence, and from information learned and observed during their patrol in the Greater Waterbury area." *Id.* at 9.

Rule 701 provides as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. As the Second Circuit has explained, "part (a)'s rational-basis requirement is the familiar requirement of first-hand knowledge or observation; part (b)'s helpfulness requirement is principally designed to provide assurance against the admission of opinions

---

[7] My order on the docket stated in relevant part: "In addition, at the conference, the Government proffered that case agents may testify as fact witnesses concerning instances where, in the course of physical surveillance, case agents believe, based on their training and experience, that Defendants engaged in drug transactions outside the view of witnesses. The Government shall file a supplemental memorandum of law describing why such testimony, or similar testimony where agents offer conclusions regarding Defendants' conduct based on law enforcement witnesses' training and experience, is admissible lay witness testimony under Rule 701. *See* Fed. R. Evid. 701 . . . *United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021); *United States v. Garcia*, 413 F.3d 201, 213 (2d Cir. 2005)." ECF No. 236.

which would merely tell the jury what result to reach." *United States v. Flores*, 945 F.3d 687, 706 (2d Cir. 2019) (citations and internal quotation marks omitted). The purpose of part (c), meanwhile, "is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16 and Fed. R. Civ. P. 26." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).

Lucas's supplemental brief recognizes that "[i]f the agents simply testify to what they see or hear, there should be no problem." ECF No. 247, at 5. Nonetheless, Defendants articulate two broad concerns: first, they seek to preclude case agents from offering an interpretation of what Defendants intended to communicate in intercepted communications, and second, they argue that case agents who surveilled Defendants cannot opine on what the case agents think Defendants did when they were outside the direct view of Defendants. *See id.* at 5-8.[8]

At the May 14 conference, the Government stated that case agents will not be asked to interpret any intercepted communications or opine on what agents thought Defendants were doing when outside the view of surveillance. Nonetheless, the Government proffered that agents may narrate their investigative decisions. In response, Defendants acknowledged that case agents can offer a factual narration of how the investigation unfolded, such as by stating

---

[8] Lucas explains: "[I]f the agents intend to offer their opinions about what the calls and meetings show, they are only doing so based on their training and experience and such testimony should be precluded under 701." ECF No. 247, at 5. Although Foster's supplemental objection does not respond to the Government's proposed use of lay opinion testimony, he joins all arguments presented by Lucas. ECF No. 252, at 1.

that case agents reacted to an intercepted telephone call by deploying a surveillance team to a particular location. Nonetheless, the parties dispute the extent to which case agents can explain *why* they took certain investigative steps in response to surveillance or intercepted calls. For example, the Government suggests it may ask case agents to "connect the dots" to explain how agents determined that Foster was using multiple "stash houses" to distribute controlled substances. Although the Government suggested it may be appropriate to take up Defendants' objections at trial, I issue this ruling so that the parties may prepare for trial consistent with the limitations I understand exist on case agent testimony.

First, case agents—as the Government acknowledges—can offer lay opinions only after the Government lays a proper foundation for such testimony. *See United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) ("The burden is on the party wishing to introduce lay opinion testimony to establish the proper foundation."). Moreover, case agents cannot testify as to other agents' opinions or opinions formed based on information not already in evidence because such testimony would not "present[] the jury with the unique insights of an eyewitness's personal perceptions." *Garcia*, 413 F.3d at 212; *accord United States v. Mitchell*, 654 F. App'x 21, 25 (2d Cir. 2016) (summary order) (holding that case agent testimony regarding the existence of a conspiracy ran afoul of Rule 701(a) because the case agent's "conclusion that [defendant] was a member of a conspiracy was based on the entirety of information collected by himself as well as other investigators," meaning "his testimony was not rationally based on his own perception"). And even after a proper foundation is established, case agents cannot testify as to collective opinions or findings established by other case agents.

Second, consistent with Rule 701(b), case agents cannot offer an interpretation of what case agents believe Defendants intended to communicate in the intercepted calls. The Second

12

Circuit has held that case agent testimony violates Rule 701(b) where it takes the form of an agent instructing the jury "what to infer from the content of the calls and in particular what to infer from the calls involving [a defendant] as to [the defendant's] participation in the drug ring." *United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004). Nor may case agents "fill in" what the jury should infer from the calls based on other context or information available to the case agent. *See Garcia*, 413 F.3d at 214 (observing that Rule 701(b) is designed to preclude opinions that would "merely tell the jury what result to reach"); *Mitchell*, 654 F. App'x at 25 (stating that "jurors are not helped within the meaning of Rule 701(b), by opinion testimony that, in addition to telling them what was in the evidence, also tells them what inferences to draw from it") (internal quotation marks omitted).[9] For these same reasons, case agents cannot opine that Defendants engaged in drug transactions in covert meetings out of the sight of case agents conducting surveillance.

Third, I agree with Defendants that the case agents cannot apply their law enforcement training and experience to explain *why* they or other agents took certain investigative steps in response to Defendants' actions and communications. That is because such explanatory testimony would require agents to proffer an opinion about Defendants' conduct that utilizes the agents' specialized experience in law enforcement. "If the opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by

---

[9] To be sure, undercover agents have been permitted to testify as to what they understood defendants to be communicating based on their direct participation in meetings with defendants. *See, e.g.*, *United States v. Flores*, 945 F.3d 687, 709 (2d Cir. 2019) (permitting undercover agent testimony into disputed meaning of conversation with defendant because "Rule [701(b)] . . . 'affords the jury an insight into an event that was uniquely available to an eyewitness'") (quoting *Garcia*, 413 F.3d at 212). It does not appear that any such testimony is planned in this trial.

reference to Rule 702, not Rule 701." *Garcia*, 413 F.3d at 215 (quoting 4 *Weinstein's Federal Evidence* § 701.03); *see also id.* at 216 ("We hold that the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion so based and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience."). "As a result, law enforcement fact witnesses may not offer opinion testimony based on specialized knowledge." *United States v. Best*, No. 3:20-CR-28 (VAB), 2022 WL 4008087, at *19 (D. Conn. Sept. 2, 2022) (citing *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007)).

For example, if an agent testifies that he sought a search warrant for a building after concluding from surveillance of the location that the building was being used as a stash house, the agent is using a reasoning process to reach that conclusion that depends on "specialized knowledge." Similarly, when an agent explains he initiated surveillance of an individual because cryptic language used in an intercepted call indicated to him that the participants were arranging a drug transaction, the agent is formulating his opinion based on his specialized knowledge.

Specialized knowledge—such as the fact that drug dealers may attempt to evade surveillance, how drug dealers communicate in code, and places where drug transactions often take place—is the proper subject of expert testimony from Special Agent Veale. Case agents, however, cannot offer lay opinions utilizing this knowledge without deploying reasoning processes acquired through "considerable specialized training and experience in narcotics trafficking." *Garcia*, 413 F.3d at 216-17; *see also id.* ("[W]hen [the case agent] concluded from wiretaps, database information, and surveillance observations, that Garcia was a 'partner' with Valentin in receiving cocaine from DeArmas, and that his responsibilities included testing

14

the quality of the cocaine, his reasoning process was not that of an average person in everyday life; rather, it was that of a law enforcement officer with considerable specialized training and experience in narcotics trafficking."); *Cabrera*, 13 F.4th at 150 (holding that lay opinion was inadmissible where the agent's reasoning evinced "an opaque, intuitive process grounded in . . . specialized knowledge as to how your average drug dealer typically behaves compared to a drug dealer who is experienced"); *United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) (holding that case agent's lay opinion was inadmissible because witness "acquired his knowledge . . . through his experience as a border agent inspecting vehicles, not through the reasoning processes of the average person"); *cf. United States v. Johnson,* 117 F.4th 28, 52-53 (2d Cir. 2024) (holding that law enforcement witness could offer lay opinion about the "concerning nature and threatening aspect of [defendant's] comments" because this opinion was based on "reasoning [that] was evident to the jury" and not "based on specialized experience that the agent had accumulated from other cases") (quoting *Cuti*, 720 F.3d at 460)).[10]

---

[10] As the Government observes in its Supplemental Notice, in some financial fraud cases the Second Circuit has approved the use of lay opinion testimony by accountants or other financial professionals. *See* ECF No. 243, at 7. For example, in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013), two accountants testified as lay witnesses about how certain transactions impacted a company's financial statements. *Id.* at 456. After first concluding that the testimony was properly admitted as factual testimony, the Second Circuit held that the testimony was alternatively admissible as lay opinion consistent with Rule 701(c) because it "reflected [the witness's] investigatory findings and conclusions, and was not rooted exclusively in his expertise." *Id.* at 460 (quoting *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004)). The Second Circuit proceeded to hold that the accountants could offer lay opinions without being qualified as experts because the accountants were asked to deploy "a process of reasoning familiar in everyday life"—that is, the impact of certain transactions on a company's financial statements. *Cuti*, 720 F.3d at 460 (citation and internal quotation marks omitted). *See also United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (holding that accountant properly offered lay opinion into the impact of sham reclassifications had on debts owed to another party). The *Cuti* court distinguished *Garcia*, 413 F.3d at 216, observing that lay opinion testimony in *Garcia* was inadmissible because the case

At the May 14 conference, the Government argued that the jury may need to understand why case agents took certain investigative steps and posited that any such testimony would be borne not from case agents' specialized knowledge but instead from information gleaned during the investigation. I am not persuaded from the current record that any such narrative testimony is appropriate here. As the Second Circuit has stated in a similar context, "the issue to be tried is not how the investigation was conducted, but whether the evidence proves the defendant's guilt beyond a reasonable doubt." *United States v. Johnson*, 529 F.3d 493, 501 (2d Cir. 2008). "A prosecutor's tactical desire to tell the jury an exciting, captivating story does not justify expanding the scope of admissible evidence to include improper matter, which, although offered as pertinent to the agent's state of mind, may be used by the jury prejudicially as evidence confirming the defendant's guilt." *Id.* Applying *Johnson*, I conclude that case agents cannot offer their opinions to explain why they took investigative steps in response to the evidence that will be presented to the jury.[11]

---

agent's opinion in *Garcia* "was based on specialized experience that the agent had accumulated from other cases and involved a specialized reasoning process not readily understandable to the average juror." 720 F.3d at 460. Here, even assuming that case agents deployed reasoning processes "familiar in everyday life"—a proposition *Garcia* rejects—I am unconvinced that agents' opinions were formed based only on experiences in this particular case rather than on training and "specialized experience that the agent had accumulated from other cases." *Cuti*, 720 F.3d at 460. Moreover, as discussed above, such testimony would further violate the requirement set forth in Rule 701(b) that witnesses—and particularly case agent witnesses—cannot testify to their opinion that Defendants are guilty of the charged offense.

[11] There is no indication in the current record that Defendants intend to put at issue the Government's motivation in pursuing this case as to them. *See, e.g.*, *United States v. Johnson*, 117 F.4th 28, 53 (2d Cir. 2024) ("In this case, the defense argued to the jury in its opening statement that Fox Corporation did not respond in the same way to all threats but singled out Johnson for his political views. . . . After the defense put that motivation at issue, it was proper for the district court to allow the government to elicit testimony from Kelley about why he responded to Johnson's threats the way that he did.").

16

For these reasons, Lucas's motion to preclude case agent testimony, ECF No. 186, is granted in part. Defendants' remaining objections to the proposed use of lay opinion testimony by case agents are denied without prejudice to renewal during trial.

### C.       Co-Conspirator Statements (ECF No. 204)

Pursuant to Federal Rule of Evidence 801(d)(2)(E) and *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), the Government moves to conditionally admit certain statements by members of the conspiracy. ECF No. 204. Foster has not filed an opposition to the motion. Lucas has filed an opposition seeking "a ruling in advance of the admission of the alleged coconspirator(s) statements against him" and submitting that the alleged co-conspirator statements the Government seeks to introduce "were not made during and in furtherance of the conspiracy as charged in the indictment." ECF No. 240, at 1. Lucas argues that any "alleged co-conspirator(s) statements relate to a separate and distinct relationship between Mr. Foster and the co-conspirator(s)," and that "a ruling is necessary prior to the admission of the coconspirator(s) statements to avoid the resulting prejudice if the statements are admitted and later determined not to be admissible." ECF No. 240, at 2.

Rule 801(d)(2) provides that a statement is not hearsay if it "is offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2). "The statement *must* be considered but does not by itself establish . . . the existence of the conspiracy or participation in it." *Id.* (emphasis added). To admit a statement by a co-conspirator under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States*

*v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999) (citation and internal quotation marks omitted). "Under the *Geaney* rule, statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of those four prerequisites." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993).

"At the motion *in limine* stage, courts within the Second Circuit typically make general rulings of admissibility with respect to categories of co-conspirator statements while leaving room for objections to specific statements during trial." *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *17 (E.D.N.Y. July 23, 2025) (collecting cases). Within the Second Circuit, district "[c]ourts generally do not hold evidentiary hearings regarding co-conspirator statements before trial because doing so would require the Court to undertake a mini-trial, significantly prolonging the proceedings and affording the defendant a complete preview of the government's evidence." *United States v. Donald*, No. 3:21-cr-8 (VAB), 2023 WL 6958797, at *14 (D. Conn. Oct. 20, 2023) (citation and internal quotation marks omitted). If a court ultimately decides that the Government has not met its burden under Rule 801(d)(2)(E), "it will 'instruct the jury to disregard the hearsay' or declare a mistrial if the hearsay is a 'large proportion of the proof' against the defendant." *Id.* (quoting *Geaney*, 417 F.2d at 1120).

At the May 14 conference, Lucas stated that the Government intends to introduce calls between Foster and other individuals that relate to alleged drug transactions between Foster and those individuals. Lucas maintains that those calls have no relationship to Lucas and do not relate to the conspiracy charged in the indictment. Lucas also argues that these statements of other individuals are not admissible for the purpose of "completeness," that is, for the purpose of putting Foster's statements into context. Lucas further argues that a limiting

18

instruction will be insufficient to ameliorate the prejudice from the alleged co-conspirator's testimony—especially given the purportedly large number of statements from Foster and the relatively small number of statements from Lucas—and that I therefore should issue a ruling barring the admission of the statements before trial.

I disagree. "Geaney is the standard practice in the Second Circuit." *Donald*, 2023 WL 6958797, at *14. Under *Geaney*, co-conspirator statements will be conditionally admitted, and I will then determine at the close of the Government's case-in-chief—or sooner if possible— whether the Government met its burden of proof. If the Government fails to meet its burden and a limiting instruction would be insufficient to "cure or ameliorate" the prejudice resulting from the statements, I may, under *Geaney*, declare a mistrial. Lucas has not offered any "compelling factors that would warrant departure from the well-settled precedent in this Circuit" regarding *Geaney*. *See United States v. Rowland*, 3:14cr79 (JBA), 2014 WL 3908115, at *2 (D. Conn. Aug. 11, 2014) (internal quotation marks and citation omitted).

I therefore grant the Government's motion and will conditionally admit the alleged co-conspirator statements subject to the Government making the required showings under Rule 801(d)(2)(E). Under *Geaney*, I will take up at the close of the Government's case-in-chief, or sooner, whether the Government has carried its burden to establish the admissibility of the statements.

## III.    CONCLUSION

For the foregoing reasons, Foster's Motion to Preclude Expert Testimony, ECF No. 168, is denied in part. Lucas's Motion to Preclude Case Agent Testimony, ECF No. 186, is granted in part and denied in part. And the Government's Motion to Conditionally Admit Co-Conspirator Statements, ECF No. 204, is granted.

**SO ORDERED.**

New Haven, Connecticut
May 15, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge